572 So.2d 316 (1990)
Elwood J. FREDERICK, Plaintiff-Appellee,
v.
The TOWN OF ARNAUDVILLE, Defendant-Appellant.
No. 89-667.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Writ Denied February 8, 1991.
Dean, Lomenick & Seemann, Otis E. Lomenick, Jr., Opelousas, for plaintiff/appellee.
Guglielmo, Lopez, Tuttle & Walker, Gina B. Tuttle, Opelousas, for defendant/appellant.
Before DOMENGEAUX, C.J., and DOUCET and KNOLL, JJ.
DOMENGEAUX, Chief Judge.
Elwood Frederick, a policeman for the Town of Arnaudville, filed this suit for worker's compensation benefits, alleging he sustained a disabling mental injury on November 12, 1986, after an altercation with his supervisor, the local chief of police. The Town of Arnaudville responded with exceptions of prescription, res judicata and no cause of action, contending Frederick's injuries and present condition were the result of a 1975 accident in which he was shot in the line of duty.
The trial judge deferred the exceptions until trial on the merits, after which he ruled in favor of Frederick. For the following reasons, we affirm.

FACTS
Elwood Frederick was employed as a patrolman by the Town of Arnaudville from July 1969 through October 1975; from April 1977 through August 1983; and from June 1984 through November 1986. On March 16, 1975, Frederick was shot in the chin after responding to what he believed would be a routine call. He was treated *317 for his injuries at St. Luke's Hospital, where he remained for several days. Because Frederick experienced nervousness and apprehension after this incident, his treating physician, Dr. Earl Morrogh, recommended he take a leave of absence. Frederick took this advice, waiting three or four months after the shooting before resuming his duties as patrolman. He filed and compromised a worker's compensation suit regarding this incident.
For unknown reasons, Frederick was dismissed in October of 1975, but rehired in April of 1977. In 1979, he took a ten day leave of absence "for nerves." On June 9, 1983, Frederick resigned because his family physician, Dr. Bobby Morrow, recommended he seek other employment. According to Dr. Morrow, Frederick's position as a police officer caused severe mental stress and strain which progressed to where Frederick was unable to continue this line of work. However, on May 28, 1984, Dr. Morrow reported that Frederick's mental stress and tension were asymptomatic and he could return to this type of work. Frederick was then rehired by the Town of Arnaudville, first as a dispatcher, and later, as a patrolman once again.
On November 12, 1986, Frederick "had words" with his supervisor, Police Chief Carrol LaGrande. According to Frederick, the chief told him "you do your business and I'll do mine." Frederick explained, "he really chewed me, but no yelling."
Approximately one hour later, Frederick checked himself into the emergency room at St. Luke's, in a state of acute distress, complaining of chest pains, abdominal pains and left arm numbness. An EKG and chest X-ray were normal, but he did have elevated blood pressure and a slightly elevated glucose level. Dr. Earl Morrogh, the admitting physician, considered the episode to be "purely an emotional upset," perhaps brought on by the stress of his employment. Frederick remained in St. Luke's for three days, and then checked into Cypress Hospital for four days.
Dr. James Blackburn, a psychiatrist, treated Frederick during his stay at Cypress and for sometime thereafter. In his initial report, Dr. Blackburn stated Frederick was admitted with a history of increasing anxiety which progressively worsened and became more intense over several years, finally reaching a phobic level with physiologic distress. He describes Frederick as a tense, nervous individual who had been able to manage his stress before the November 12, 1986 incident. In Dr. Blackburn's opinion, the fear and anxiety produced by the 1975 shooting was aggravated by the fact that he had to work as a policeman every day, and the 1986 incident with his supervisor "brought all of this to some point of culmination." What made the incident particularly traumatic was that Frederick could not release his anger by arguing back with the police chief.
Dr. Blackburn believed plaintiff was totally disabled from working as a policeman. If he returned to work at all, it would have to be in what Dr. Blackburn termed a "sheltered workshop," where acceptance of responsibility would be very gradual. Considering Frederick's age and his lack of marketable skills, Dr. Blackburn projected a limited prognosis as to his re-employment.
Dr. Bobby Morrow, Frederick's family physician, described plaintiff as an emotionally unstable individual who developed a smoldering tenseness regarding his work as a policeman. On September 29, 1987, he wrote a letter stating plaintiff was totally and continuously disabled as a policeman. In his deposition, Dr. Morrow stated Frederick was emotionally capable of performing other work, keeping with his age (56), educational status (no high school degree) and physical problems such as hypertension, cardiovascular disease, high blood pressure and diabetes. Dr. Morrow said he would defer to Dr. Blackburn, the psychiatrist, as to which incident triggered Frederick's current condition.
At defendant's request, Frederick was also examined on two occasions by Dr. Louis Cenac, a psychiatrist in Houma, Louisiana. Dr. Cenac concluded Frederick suffered from post-tramatic stress disorder, chronic in nature, with a delayed onset, but related to the 1975 shooting. In March and *318 April of 1987, Dr. Cenac considered Frederick to be totally disabled, although with treatment from a psychiatrist experienced in stress disorders, Frederick could eventually be considered employable. According to Dr. Cenac, post-tramatic stress disorder is generally treatable within two years time.
In written reasons, the trial judge found Frederick to be temporarily totally disabled, concluding the 1986 altercation with his supervisor aggravated his preexisting medical condition brought on by the 1975 shooting. The judge rejected defendant's argument that plaintiff's present injuries are completely attributable to the shooting, thus overruling the exceptions of prescription and res judicata.
After reviewing the record, we find the medical evidence established Frederick was totally disabled at the time of trial. The record further established Frederick sufficiently recovered from his gunshot injuries to resume his duties as patrolman, but that his mental condition progressively worsened, with the November 12, 1986 employment incident triggering his present disability. The sole question on appeal is whether this incident is an "accident" entitling plaintiff to compensation.

RECOVERY FOR MENTAL INJURIES
In Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138 (La.1989), the Supreme Court held a mental injury induced by mental stress is compensable when it is caused by a significant employment incident, even though the injury is not accompanied by any apparent signs of physical trauma. However, the court in Sparks also recognized that merely showing a mental injury is related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to entitle the claimant to compensation. The mental injury must still be precipitated by an "accident," i.e., an unforeseen event that occurs suddenly or violently.
Examples of such events listed by the court (taken from Louisiana jurisprudence) include witnessing the death of a coemployee or being placed in iminent fear of bodily harm. However, the court also cited with apparent approval Taquino v. Sears, Roebuck and Company, 438 So.2d 625 (La. App. 4th Cir.1983), writ denied, 443 So.2d 597 (La.1983), which held the plaintiff stated a cause of action in alleging mental injury caused by stressful incidents at work, including a transfer, a reduction in pay and an "inordinate amount of pressure" from supervisors.
Upon careful review of the record and the jurisprudence cited above, we cannot say the trial judge erred in holding plaintiff's injuries are compensable. The trial judge decided this case before the Supreme Court handed down Sparks; hence, his opinion does not contain a detailed discussion of the "accident" requirement. Nonetheless, we find the principle relied upon by the trial court, namely, the aggravation of a preexisting injury, is still applicable.
In 1975, Frederick suffered physical and mental injuries in a work related accident, both clearly compensable under the compensation act. Although the physical injuries healed, the mental problems remained with Frederick throughout his career and in fact progressively worsened. In spite of the plaintiff's mental condition and his apparent unsuitability for his employment, the Town of Arnaudville rehired Frederick twice as a policeman, in 1979, after he took a leave of absence "for nerves" and in 1984, after a one year separation for the same reason.
The law is clear that an employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. Guillory v. United States Fidelity and Guaranty Insurance Company, 420 So.2d 119 (La.1982).
Frederick has demonstrated his disability results from his altercation with the police chief. Perhaps this incident, taken by itself, would not meet the Sparks requirement of a "significant employment incident." But when considered with Frederick's preexisting, work related, mental condition, *319 which was asymptomatic immediately prior to this incident, we cannot say the trial court erred in finding the plaintiff proved a work related accident.
We are aware of the recent Fourth Circuit case of McDonald v. American General Fire and Casualty Company, 570 So.2d 98 (La.App. 4th Cir.1990), which denied benefits to a plaintiff with a longstanding anxiety disorder, who claimed his mental disability resulted from a similar incident with his employer. McDonald involved an issue of fact as to whether the claimant's disability was caused by his employment or by serious marital and financial problems, and the Fourth Circuit deferred to the trial court's finding that plaintiff did not prove a work related accident. We find the instant case is distinguishable.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to defendant, the Town of Arnaudville.
AFFIRMED.