649 So.2d 655 (1994)
Johnny Ray LEWIS, Sr., Plaintiff-Appellee,
v.
BEAUREGARD MEMORIAL HOSPITAL, Defendant-Appellant.
No. 94-318.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*656 Robert Lawrence Beck Jr., for plaintiff appellee.
Mesonie Terrence Halley Jr., for defendant appellant.
Before PETERS and BERTRAND,[*] JJ.
PETERS, Judge.
This is a workers' compensation case. Johnny Ray Lewis, Sr., claims to have sustained a mental injury resulting from work-related stress while in the course and scope of his employment with Beauregard Memorial Hospital in DeRidder, Louisiana. The employer denied the claim and refused to pay benefits. After trial, the hearing officer found in favor of the employee and awarded temporary total disability benefits for the claimed mental injury. Beauregard Memorial Hospital appeals this decision.

FACTS
In December of 1982, Johnny Ray Lewis, Sr., was employed as a security guard by the Beauregard Memorial Hospital located in DeRidder, Louisiana. His duties included patrolling the halls and parking lots, escorting employees to their vehicles, and running errands for the various departments. He was later appointed supervisor of security at the facility but that title only added scheduling duties to his job description. He worked continuously as security supervisor until April 25, 1993, at which time he contends his emotional state totally deteriorated and he became disabled. The event giving rise to this emotional disability was a severe thunderstorm which struck the DeRidder area on the evening of March 22, 1993. This storm caused a partial power outage which affected the critical care areas of the hospital. As with most such facilities, the Beauregard Memorial Hospital has contingent power systems for such emergencies. In the event of power failures, two back-up generators are in place and designed to restore power within ten seconds after the main system goes down. However, on the evening of March 22, 1993, the back-up system did not respond as it was designed to do, and the generators failed to automatically restore power to the affected portion of the hospital.
When the partial failure occurred, Lewis was on duty in the day care wing which is an older part of the hospital serviced by a separate electrical system. This system was not affected by the partial outage and therefore, Lewis was not immediately aware of the emergency. As he left to return to the main building he noticed that the emergency lights in the hallway were on and the fire doors were closed, signs that there had been a power failure. Almost immediately, he was *657 met by the hospital administrator, Theodore Badger. The two men proceeded to the main power plant to ascertain the problem and restore power as quickly as possible. They were able to immediately restore power by activating the malfunctioning generators. Although the two men had no way of knowing the results of the power failure at the time they activated the generators, later investigation revealed that no patients suffered harm because of the emergency. In fact, the actual power outage lasted less than five minutes.
Lewis and Badger were then met by John Russell, Director of Plant Operations and Lewis' immediate supervisor. Lewis was informed by either Badger or Russell that the power had been off for approximately twenty minutes and Russell asked Lewis questions concerning his whereabouts at the time of the outage, what he was doing there, and what actions he took in response to the power outage. Lewis testified that he interpreted these questions to mean Russell considered his performance in the emergency to be unsatisfactory. However, Russell testified that he was upset over the generator's failure and the purpose of his inquiry was to determine whether the existing safety procedures had been adequate to handle the situation.
Lewis was requested to attend a meeting with the hospital safety committee approximately one week after the incident. Because this was the first time he had been invited to attend a safety meeting since being employed at the hospital, Lewis testified he was fearful of attending. He believed the reason for his requested attendance was to give the committee the opportunity to fire him. Contrary to his beliefs, his presence was required to make available to the committee an additional source of information concerning the power failure. In fact, he was asked no questions and there was no mention of, or threat toward, his employment status.
Four days after the power outage, Lewis was examined at the Alexandria Veterans Administration Hospital by Dr. David Daniel, a clinical psychologist. He complained to Dr. Daniel that he had been hearing voices, and seeing green lights and faces. He told Dr. Daniel the voices were laughing at him and making fun of him. Dr. Daniel recalls Lewis mentioning his job during the examination and interview, but could not recall a specific reference to the power outage. Dr. Daniel diagnosed Lewis as having a depressive disorder with possible hallucinations, and tried unsuccessfully to convince Lewis to enter the hospital for further evaluation.
Lewis testified that he continued to work but suffered increasing feelings of guilt as he believed he had not reacted promptly to the situation. He believed he failed in his responsibility to the hospital and began to feel more depressed daily. He testified that he was always sweating, shaking, and sometimes experiencing periods of tremendous confusion, even black-outs. He also testified that each night after work he would come home and cry.
On April 25, 1993, Mrs. Lewis received a telephone call from one of the hospital employees informing her that her husband had become upset at work and was crying hysterically. Mrs. Lewis sent their son, James Earl Lewis, to check on his father. James Earl testified that when he arrived at the hospital he found his father leaning against a wall and crying, and when they returned home, his father would do nothing but sit in front of the television set. Another son, Joseph Lewis, was called by Mrs. Lewis to come to the home. Joseph testified that when he arrived, his father's hands were shaking and he was very disoriented. Joseph convinced his father to be examined that evening.
He was admitted to Beauregard Memorial Hospital and placed in intensive care for several days under the care of Dr. Flynn Taylor. Because of an extremely high enzyme level, Dr. Taylor initially feared Lewis had suffered a heart attack. Dr. Taylor referred Lewis to Dr. Carl Fastabend, a cardiologist in Lake Charles, Louisiana. Dr. Fastabend concluded that Lewis was not suffering from a cardiac malfunction, but rather depression. He recommended that Lewis seek therapy for his condition and referred him to Dr. Edwin Bonilla, a general practitioner in DeRidder.
*658 When Dr. Bonilla first examined Lewis, the patient was complaining of chest pains, weakness, and dizziness. Dr. Bonilla's diagnosis was also acute depression, and on June 3, 1993, admitted Lewis to Beauregard Memorial Hospital for observation. He also recommended that Lewis begin counselling treatment with Terri Theaux, a licensed professional counselor in DeRidder, Louisiana. Ms. Theaux continued to counsel with Lewis even after he was discharged from Beauregard Memorial on June 5, 1993. Not long after his release from the hospital, Lewis began seeing professionally Dr. Harry Gutierrez, an Alexandria, Louisiana, psychologist, who also diagnosed his difficulties as depression. In fact, each of the medical experts who examined Lewis found him to be very depressed and guilt ridden. According to Lewis, the intensity of his depression and feelings of guilt were so great that he often suffered from black-outs, dizzy spells, and memory loss. As a result of these conditions, Lewis claims he was unable to return to work.
Based upon the evidence presented, the hearing officer found that Lewis had established by clear and convincing evidence that he had sustained a mental injury or illness which was a result of work-related stress and was entitled to temporary total disability benefits from the date of his last employment, April 25, 1993. Beauregard Memorial Hospital contends this finding was in error.

LEGAL ANALYSIS
Under the workers' compensation law of this state, any "employee not otherwise eliminated from benefits," who suffers "personal injury by accident arising out of and in the course of his employment," is entitled to receive compensation benefits from his employer during the period of his disability. La.R.S. 23:1031. Therefore, in order to recover benefits, a claimant must establish an accident, an injury arising from the accident, and the accident's relationship with the employment.
An "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). The workers' compensation law limits compensable "injuries" to "include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom." La.R.S. 23:1021(7)(a).
In 1989 the Louisiana Supreme Court extended the definition of "injury" to include a mental injury induced by mental stress when the mental injury is caused by a significant employment-related event or incident, but is not accompanied by any apparent sign of physical trauma. Sparks v. Tulane Medical Center Hospital And Clinic, 546 So.2d 138 (La.1989), and Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989). In response to these decisions the legislature amended Louisiana Revised Statutes 23:1021 to, among other things, add a provision to cover mental injuries caused by mental stress and to establish the requirements for proof thereof.
The new provision, Louisiana Revised Statutes 23:1021(7)(b), reads as follows:
Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
This amendment codified the right of recovery for mental injuries caused by mental stress as recognized in Sparks and Williams but added the requirements that in order to recover the "mental injury" must be "the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence."
We first note that Louisiana Revised Statutes 23:1021(7)(b) is not clear as to whether the "mental injury" aspect, or the "sudden, unexpected, and extraordinary stress" aspect, or both are subject to the requirement *659 of clear and convincing evidence. However, because we find both elements are established by clear and convincing evidence, we need not address that issue.
The definition of "accident" was not changed by the addition of Louisiana Revised Statutes 23:1021(7)(b). The "event" requirement in the definition is satisfied in either of two ways.
The "event" which triggers coverage, then, may be an unexpected and sudden or violent occurrence which causes injury, or it may be an unexpected change in the employee's physical condition which renders him incapable of working, a change caused at least in part by an employment incident. See Malone & Johnson, 13 Louisiana Civil Law Treatise, Worker's Compensation, Sec. 214 (1980 & 1989 Supp.).
Sparks, 546 So.2d at 143.
In this case the testimony reveals that although the hospital had experienced power outages in the past, the back-up generators had never before failed to activate within the prescribed ten seconds. The hospital administrator described the outage as a "colossal event." The hospital environment, the need for immediate power to operate lifesaving and life-maintaining equipment, and the violent nature of the storm on the evening of March 22, 1993, simply added to the nature of the "event." Clearly the electrical storm and related power outage constituted an accident within the meaning of Louisiana Revised Statutes 23:1021(1).
The medical evidence is uncontradicted that Lewis suffers from a mental or depressive disorder which has left him temporarily or totally disabled. The hospital contends any mental injury or illness is not "the result of a sudden, unexpected, and extraordinary stress related to his employment." La.R.S. 23:1021(7)(b). Rather, the employer argues that Lewis has had an extensive history of depressive problems spanning a ten year period which were unrelated to his employment at the hospital.
Lewis' prior medical history is a significant factor in determining the compensability of his present claim. The first reported incidence of Lewis being treated for a depressive condition occurred in December of 1981 when he was seen by one of his family doctors, a Dr. Brown. The doctor's diagnosis was acute depression and he referred Lewis to the Alexandria Veterans Administration Hospital for psychiatric treatment. Lewis was hospitalized for nineteen days for treatment of atypical depression.
Lewis did not again seek treatment until almost eight years later. In January of 1990 he presented himself to Dr. Flynn Taylor complaining of dizziness and severe chest pains. Dr. Taylor's initial conclusions were that his symptoms were a result of stress Lewis was experiencing at work and at home. As a follow-up, he referred Lewis to Dr. David Post, a psychologist, and to Dr. Turner, a cardiologist, for further treatment. Dr. Turner's examination revealed that Lewis' problems were not cardiac related and therefore, Dr. Taylor's final diagnosis was acute stress and anxiety.
The next reported medical evaluation was that of Dr. Daniel on March 26, 1993, four days after the power outage at the hospital. Lewis did not attempt to hide his prior difficulties. Dr. Gutierrez was informed by Lewis that he had suffered from depression in prior years and Terri Theaux noted that Lewis indicated he had been fighting a depressive problem for several years. However, there was a period from 1981 until 1990 when Lewis was apparently not suffering from any depressive symptoms.
Even considering Lewis' past mental illness difficulties, the health care providers established a casual connection between Lewis' current condition and the power outage. Dr. Gutierrez, Terri Theaux, and Dr. Bonilla, all stated that Lewis' current depressive symptoms stem from the power outage incident at the hospital. As Dr. Bonilla testified:
"Q: Was it your belief at that time that his emotional state had deteriorated following that power outage, following which time he experienced a great deal of guilt?
"A: Yes, sir.
"Q: And that his emotional state had deteriorated to the point where it was when *660 you found him, which was basically an emotional wreck?
"A: Well, on the second visit I couldn't understand why he was like that. I could pinpoint the incident why he got depressed.
"Q: What was the incident that you pinpointed?
"A: What you just mentioned, the failure on the generator."
The hearing officer concluded that Lewis had carried his burden of proof by clear and convincing evidence that the power outage at the hospital in March of 1993 was the accident giving rise to the mental injury or illness suffered by Lewis.
The remaining issue addresses the question as to whether the events of March 22, 1993, created the "extraordinary stress" required by Louisiana Revised Statutes 23:1021(7)(b).
The hearing officer concluded that Lewis had proven by clear and convincing evidence that he sustained a mental injury or illness as a result of work-related stress. The standard of review of this determination is that of manifest error. Autin v. Hessmer Nursing Home, No. 93-1492 (La.App. 3d Cir. 6/1/94); 638 So.2d 693. We find no manifest error in the hearing officer's conclusions.
The final element of the analysis is to determine whether the work-related stress which caused the mental injury "was the result of a sudden, unexpected, and extraordinary stress" as required by Louisiana Revised Statutes 23:1021(7)(b). The Fourth Circuit Court of Appeal has concluded that
[T]he "extraordinary" nature of the stress at issue should be determined, not from the point of view of whether the particular claimant found the stress to be extraordinary, but whether an ordinary reasonable person of usual sensibilities would find the stress extraordinary.

Bryant v. Giani Investment Company, 626 So.2d 390 (La.App. 4th Cir.1993), writ denied, 94-0089 (La. 3/18/94); 634 So.2d 852.
The hearing officer found that the power outage was not a sudden, unexpected, and extraordinary stress from the objective viewpoint of a reasonable person of usual sensibilities, but that it was a sudden, unexpected, and extraordinary stress from the viewpoint of Lewis, considering his preexisting problems. Rather than refuse to follow the standard established in Bryant, the hearing officer attempted to distinguish it from the current case by focusing on the preexisting problems of Lewis and the well settled rule that in workers' compensation law an employee's preexisting infirmity does not disqualify him from recovering benefits if the work-related injury either aggravated or combined with the infirmity to produce the disability. In Walton v. Normandy Village, 475 So.2d 320 (La.1985), the Louisiana Supreme Court stated,
Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed.... Correlatively, when an employee proves that before the accident he had not manifested any disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. id at 324 (citations omitted).
See also Autin v. Hessmer Nursing Home, supra.
This circuit has applied this same principle to an employee suffering from a mental disability in Frederick v. Town of Arnaudville, 572 So.2d 316 (La.App. 3d Cir.1990), writ denied, 575 So.2d 373 (La.1991), wherein an employee was awarded benefits as a result of an altercation with his employer. The court noted that an altercation by itself would not have been sufficient, but coupled with the employee's prior mental problems as a result of a prior work-related accident, the injury was compensable. The court stated, "The law is clear that an employer takes the worker as he finds him. An abnormally susceptible *661 worker is entitled to no less protection under the compensation statute than a healthy worker." Id at 318 (citations omitted).
We agree with the conclusion reached by the hearing officer as well as the application of the legal principles set forth in Walton, Autin and Frederick. However, we find it unnecessary to distinguish Bryant, supra as we decline to apply the "reasonable person" test to a mental injury/mental stress case. We find nothing in Louisiana Revised Statutes 23:1021(7)(b) that requires an evaluation based upon the "reasonable person" standard but, rather, the analysis must focus on the effect a particular stress might have on the particular injured employee. We find it inappropriate to apply an objective test to such a highly subjective mixed question of law and fact as to what is an "extraordinary stress." Such a determination must be made on a case by case basis. We agree that "[t]he 1989 Amendments to the Worker's Compensation statute clearly reflect an intent by the Legislature to stringently condition the award of worker's compensation benefits for mental injury or illness." Bryant, 626 So.2d at 392. However, that intent is satisfied by the requirement that there be a "sudden, unexpected, and extraordinary stress" and that the burden of proof be met by "clear and convincing evidence." La.R.S. 23:1021(7)(b). We find no authority for subjecting the injured employee to any additional burdens in order to recover.
In conclusion, we affirm the judgment of the hearing officer finding that Johnny Ray Lewis, Sr. has established by clear and convincing evidence that he is temporarily and totally disabled and entitled to workers' compensation benefits from the date of his last employment, April 25, 1993.
The judgment below is affirmed and costs assessed against the defendant-appellant, Beauregard Memorial Hospital.
AFFIRMED.
NOTES
[*] Honorable Lucien Bertrand, Jr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.