690 So.2d 802 (1996)
Helen QUILLIN, Plaintiff-Appellant,
v.
CALCASIEU MARINE NATIONAL BANK, Defendant-Appellee.
No. 96-685.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
Rehearing Denied February 20, 1997.
Thomas Allen Filo, Lake Charles, for Helen Quillin.
Mark Alan Watson, Alexandria, for Calasieu Marine National Bank.
Before YELVERTON, WOODARD and AMY, JJ.
*803 YELVERTON, Judge.
This workers' compensation appeal is from a claim for benefits asserted by Helen Quillin and rejected by the Administrative Hearing Officer. Quillin claims to have sustained a mental injury resulting from work-related stress while in the course and scope of her employment with Calcasieu Marine National Bank. The hearing officer found that no accident had occurred and dismissed. We affirm.

FACTS
Quillin went to work for Calcasieu Marine in 1989 as an audit clerk. In June 1994, when the events occurred giving rise to this lawsuit, she was working in retail administration. Her duties included going to each branch and checking the safe deposit boxes to make sure the bank had all the keys for the boxes that were not rented, ensuring that all the boxes had signature cards and contracts, ensuring that no one else was entering the boxes, confirming that the bank had requests for new keys for new boxes, and guaranteeing that the unclaimed boxes were drilled.
On Friday, June 3, 1994, Quillin discovered that one of the employees, Margaret Sweet, had a key to a customer safe deposit box. The key had been passed down from a previous employee. Employees were supposed to have keys only to the safe deposit boxes that the bank used for business. After some investigation, Quillin could find neither a signature card nor a contract indicating whether the box had been closed or was still being rented. Quillin notified her supervisor, Vickie Long, who proceeded to help investigate the matter. They looked in the boxes where keys for unrented boxes are kept, but they could not find the second key which would indicate that the box had been closed. A computer print-out revealed the name of the customer who had rented the box. Quillin wanted to contact the customer right then. Long decided she would first talk to Steve Landry, chief head auditor for Calcasieu Marine, about the situation.
After this, Quillin began to believe that people were talking about her in connection with the situation. She worried about it all weekend. When Quillin went back to work the next week, she again approached Long with the thought that they should contact the customer. However, on Wednesday, Long told Quillin that Landry, the chief head auditor, wanted them to open the safe deposit box. Quillin claimed that that message really upset her because she thought it was illegal to open the customer's box. As Quillin, Long, and Sweet proceeded to go open the safe deposit box, Quillin stopped and refused, because the customer had not been contacted. Long told her to go back upstairs. Quillin became very upset and started crying and throwing up. On Friday, Quillin suffered a heart attack and was hospitalized.
Sweet, who no longer works for Calcasieu Marine, testified that they found the second key. This was verified by Long. Both of these ladies testified that Quillin was present when the second key was found. Having both keys in their possession meant that the safe deposit box was closed and it was alright to open the box.
Quillin found out in 1992, before her heart attack in 1994, that she had coronary artery disease. She had a left heart catheterization in 1992, and a directional atherectomy, heart catheterization, and bypass surgery in 1993. She is not making a claim for workers' compensation benefits as a result of the heart attack she suffered after the safe deposit box incident.
What Quillin is claiming is that the incident that began on June 3, 1994, with her discovery/belief that Margaret Sweet wrongfully had a key to a customer safe deposit box caused a mental injury and disability which is compensable under La.R.S. 23:1021(7)(b). She claims that the hearing officer erred in finding that the incident did not constitute an "accident" within the meaning of the workers' compensation laws. In the alternative Quillin claims that the hearing officer erred in finding that an "accident" is required as a prerequisite to compensability under La.R.S. 23:1021(7)(b).

MENTAL INJURY
The appropriate standard for appellate review in workers' compensation cases is *804 the "manifest error-clearly wrong" standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706. The hearing officer found that the only accident which occurred was in Quillin's mind. Quillin felt that only one key had been located and that bank policy was being violated. The hearing officer found that there were two keys and that bank policy had not been violated. The hearing officer refused to apply a subjective standard to find that an accident had occurred.
La.R.S. 23:1021(7)(b) concerning mental injury caused by mental stress reads as follows:
Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
This court thoroughly discussed this statute and the requirements for proof in Lewis v. Beauregard Memorial Hosp., 94-318 (La. App. 3 Cir. 11/2/94); 649 So.2d 655. We pointed out that La.R.S. 23:1031 allows recovery for compensation benefits for any "employee not otherwise eliminated from benefits," who suffers "personal injury by accident arising out of and in the course of employment...." We also explained that the definition of accident was not changed by the addition of La.R.S. 23:1021(7)(b).
A review of La.R.S. 23:1021(7)(b) clearly establishes that it requires a "personal injury by accident...." The legislature did not abandon the "accident" requirement when it added this provision in 1989.
An "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).
The "event" which triggers coverage, then, may be an unexpected and sudden or violent occurrence which causes injury, or it may be an unexpected change in the employee's physical condition which renders him incapable of working, a change caused at least in part by an employment incident.
Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138, 143 (La.1989) [citing Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 214 (1980 & 1989 Supp.)]; Lewis, 649 So.2d 655.
We are aware of another case handed down by this court, Henry v. Gulf Coast Cas. Ins. Co., 95-241 (La.App. 3 Cir. 1/31/96); 670 So.2d 307, and cited by Quillin for the proposition that the statute contemplates only a showing of work-related sudden, unexpected, or extraordinary stress and that such showing shall be considered a "personal injury by accident" under the Workers' Compensation Act. However, the only issue in that case was whether the stress experienced by the president of an insurance company after Hurricane Andrew was sudden, unexpected, and extraordinary as required by La.R.S. 23:1021(7)(b). There was no question that Hurricane Andrew met the definition of "accident." In order to recover for a mental injury caused by work-related stress, a claimant must still prove that he or she suffered an accident.
Quillin can point to an event at the bank which she asserts caused her mental injury, the "safe deposit box incident." However, testimony in the case reveals that this incident occurred over several days beginning on Friday with the discovery of the customer's key and ending on Wednesday when it was decided that the safe deposit box would be opened.
Quillin declared that it was part of her duties to check that everything was alright with the safe deposit boxes. Quillin also stated in her deposition that, a couple of times previously, she had found that the contract and line card had not been pulled indicating a safe deposit box was closed. The bank could also get written up for having a box that is closed when the bank still has the *805 contract and line card. These are the types of problems that Quillin was expected to find.
The evidence reveals that this event did not happen suddenly. It occurred over several days. This event did not happen unexpectedly. Finding one customer key and not the second was not unforeseen; it could have occurred in Quillin's job since part of her job entailed auditing safe deposit boxes. She was not asked to do anything that she did not want to do. She did not participate in the opening of the safe deposit box. We also find that the hearing officer did not err in finding that before the safe deposit box was opened, there were two keys located in the presence of Quillin even though she believed there was but one. This event is not like a power outage or a hurricane.
We agree with the hearing officer that Quillin did not prove that she suffered an accident as defined by La.R.S. 23:1021(1). Since Quillin failed to prove that she suffered an accident, she has failed to prove her entitlement to compensation benefits.
The judgment below is affirmed, and costs are assessed against Helen Quillin.
AFFIRMED.
WOODARD, J., dissents and assigns reasons.
WOODARD, Judge, dissenting.
I believe that my colleagues apply the statute too narrowly regarding the standard for finding a mental injury, as well as require proof in mental injury cases not required of those who suffer physical injuries. In so doing, they make it almost impossible for any worker to be able to prove mental injury. I must, therefore, respectfully dissent.
The Workers' Compensation Act was designed to provide compensation for employees who are injured as a result of their employment. In cases where an employee sustains a mental injury, however, it is not as easy to establish the exact moment of injury, the "accident" which is required to have occurred. Mental injuries are not injuries which necessarily result in an immediate feeling of pain or impairment, as with physical injuries. Rather, mental injuries often manifest themselves in ways which are not instantly recognizable and are often caused by the cumulation of several factors or incidents. As a result, the nature and cause of mental injuries are not as easily determinable as are the nature and cause of physical injuries. This has the effect of prompting the court to rely more on the diagnosis of the medical professionals and less on what a lay person would determine to be an injury or an accident which, in and of itself, serves a greater burden on the employee attempting to prove injury.
Nonetheless, while mental injuries are often hard to substantiate, such is not the case here. Quillin is not a claimant who suffers from some "phantom" injury or low level stress associated with any job. Rather, the unrefuted testimony from all three doctors, including the court appointed independent medical examiner, was that she has serious and debilitating injuries which preclude her from working. Furthermore, all three testified that Quillin suffered a mental injury which was either brought on by the "safety deposit box incident," or exacerbated by it.
The majority does not quibble with the evidence proving injury and that there was an event"the safety deposit box" incident. Notwithstanding, they hold that the "safety deposit box incident" was not an accident, presumably because the injury arose out of duties which are part of Quillin's job and were, therefore, not unexpected. The implication is that if an employee is injured as a result of performing duties expected by his or her job, then he or she cannot now complain about them, even if they led to injury. This analysis is not in keeping with workers' compensation jurisprudence. An employee in a workers' compensation case need only show that he or she was injured as a result of his or her employment. The foreseeability of the circumstances surrounding that injury is not relevant. For example, it is not unforeseen that a person who cuts trees for a living may be injured by flying debris. That person, however, would not be denied benefits because the accident was foreseeable, or because flying debris is part of his or her job. We would not even ask whether that person caused his or her own injury. Nor would we *806 ask whether someone else doing the same job would have been injured or affected by the injury in the same way. Rather, the only inquiry would be whether that employee was injured during the course and scope of employment. On the contrary, the majority requires a much greater standard not supported by statute or jurisprudence.
The analysis in the instant case should be simply on whether Quillin's injury "arose out of" her employment. That is, whether her employment gave rise to her injury. All three doctors testified that Quillin's injury was a result of the "safety deposit box incident" at the bank, an identifiable and undisputed event. This evidence was uncontroverted.
Notwithstanding, the majority holds that since the event "occurred over several days," it was not an "accident" under the statute. I submit that the actual event occurring over several days does not serve to diminish Quillin's claim but rather strengthens it, as the duration compounded the initial injury. Quillin's mental injury began to manifest itself once she discovered that an employee was in possession of a safety deposit key. While the majority acknowledges this incident as an event, they hold that this event did not happen "suddenly," as is required. The "suddenly" requirement has been held to apply to either the precipitating incident (in that the "incident" occurred suddenly), or in the manifestation of disability. Oalmann v. Brock and Blevins Co., Inc., 428 So.2d 892 (La.App. 1 Cir.1983). Accordingly, ample testimony established that Quillin's injury was sudden and was precipitated by her employer's refusal to contact the last known customer to ascertain whether the safety deposit box was still open. While the whole "incident" was not resolved until almost 5 days later, the onset of Quillin's symptoms and injury was sudden and unexpected.
The majority cites Henry v. Gulf Coast Cas. Ins. Co., 95-241 (La.App. 3 Cir. 1/31/96); 670 So.2d 307, and Lewis v. Beauregard Memorial Hospital, 94-318 (La.App. 3 Cir. 11/2/94); 649 So.2d 655, in support of its holding that the "safety deposit box incident" was not an "accident" covered by the statute. While the majority is correct in holding that the hurricane in Henry, and the power outage in Lewis were accidents, it errs in suggesting that all accidents which cause mental injury must be of this magnitude. In Henry, it was not the hurricane which actually caused the claimant's injury, but rather the extreme reactions, which took place over time, of the insurance policy holders in their dealings with Henry himself. Indeed, it was not until almost a month after the hurricane that Henry began to exhibit signs of stress related to the large amount of claims which had to be processed. It was not the hurricane itself which caused Henry's injury, but rather the cumulative stress of dealing with numerous irate customers. Like Henry, Quillin began to experience stress as soon as she realized that the bank was not going to contact the last customer listed as being in control of the safety deposit box. This "event," like the hurricane in Henry, was only the first in a number of events which contributed to Quillin's injury. In Henry, the final event which caused the mental injury to manifest itself was a conversation between Henry and an irate policyholder. Thus, the "event" in Henry began with the effects the hurricane produced, which did not manifest objective, debilitating symptoms of stress until much later. In the present case, Quillin's stress began on the day she discovered the key on another employee's key ring and did not end until the box was opened almost five days later. Thus, the entire period can be seen as the "event" causing injury. Furthermore, the fact that the incident was not as dramatic as a hurricane or a power outage does not detract from the fact that it was an employment related event, fully substantiated by the record.
Further, the workers' compensation statute has been applied very liberally in physical injury cases where the employee is not able to point to the exact moment when his or her injury was sustained. In Joseph v. Martin Mills, Inc., 394 So.2d 722, 723 (La. App. 3 Cir.1981), this court held that "the exact date of the accident is not so crucial as long as it occurred in the course and scope of plaintiff's employment." Furthermore, testimony from Quillin's coworkers established *807 that Quillin showed no signs of any mental injury before the incident.
Because of the difficulty in proving a mental injury, I believe the majority today places an unnecessarily high and perhaps insurmountable burden on employees to show the exact moment in which the injury occurred. Based on the purpose and application of the workers' compensation statute and the jurisprudence, I would find that Quillin has met her burden of showing an accident and injury which arose out of her employment. Thus, I would reverse.