783 So.2d 652 (2001)
Eva PARTIN
v.
MERCHANTS & FARMERS BANK.
No. 00-1113.
Court of Appeal of Louisiana, Third Circuit.
May 9, 2001.
*653 David Bruce Jones, Attorney at Law, Sulphur, LA, Counsel for Plaintiff/Appellee: Eva Partin.
Bradley John Gadel, Percy, Smith, Foote & Gadel, Alexandria, LA, Counsel for Defendant/Appellant: Merchants & Farmers Bank.
EN BANC.
SULLIVAN, Judge.
Farmers and Merchants Bank (the Bank) appeals a judgment awarding Eva Marie Partin workers' compensation benefits for a mental injury allegedly caused by job-related stress. For the following reasons, we affirm.

Discussion of the Record
Mrs. Partin had been employed by the Bank since 1978, working her way up from teller to branch officer. On August 6, 1996, she was called into a meeting with the Bank's president, Ron Steed, and its personnel vice-president, Kay Wilbanks. At this meeting, Mrs. Partin was informed that she was being demoted from branch officer to teller because of her lack of managerial skills. With the demotion came a reduction in pay from $17,540.00 to $11,500.00.
At trial, Ms. Wilbanks testified that the Bank's action was based in part on an incident of June 4, 1996, involving a $5.00 discrepancy between a teller's balance sheet and Mrs. Partin's surprise audit of that teller, Helen Childers. According to Ms. Wilbanks, the Bank's paperwork indicated that Mrs. Partin either failed to detect or did not report a "forced balancing" by Ms. Childers that should have been revealed in the surprise audit. Ms. Wilbanks explained that forced balancing involves manipulation of the cash in a teller's drawer to conceal either a shortage or overage. Because forced balancing is a dishonest act, any teller who commits it is subject to immediate dismissal, per the Bank's policy.
At trial, Mrs. Partin denied that a forced balancing occurred, contending instead that a mistake was made in the correction of an error between two of her tellers. She explained that both Ms. Childers and the vault teller, Andrea Howard, were, respectively, over and short that day by the same amount, $5.00. In trying to find the error, Ms. Partin noticed that a $5.00 mistake had been made when Ms. Childers "bought" some change from the Bank's vault. To correct this mistake without exchanging money between the tellers, Mrs. Partin instructed them to make handwritten "cash-in" or "cash-out" tickets so that they would both balance for the day. However, Ms. Childers either forgot or did not have enough time to credit the "cash-in" ticket to her drawer. Therefore, without Mrs. Partin's knowledge, she later returned the $5.00 in change to the vault teller, Ms. Howard, who then discarded her "cash-out" ticket. *654 Although this exchange put the two tellers in balance, it resulted in the $5.00 discrepancy between Ms. Childers' balance sheet and Mrs. Partin's surprise audit.
Mrs. Partin testified that Mr. Steed and Ms. Wilbanks did not mention the $5.00 discrepancy at the meeting that resulted in her demotion. She said that she was shocked when they told her that she lacked managerial skills because she had worked in supervisory positions at the Bank for thirteen years. She reacted to the demotion by crying and shaking, and upon the conclusion of the meeting, she immediately went to her family physician's office. She testified that after four weeks of crying, pacing, and not sleeping, she was referred to a psychiatrist, Dr. Walker Goodin, for further treatment. Mrs. Partin never accepted the position of teller, and she collected both short-term and long-term disability payments from the Bank.
Dr. Goodin diagnosed Mrs. Partin with a major depressive disorder that was triggered by the loss of her position at the Bank, although he acknowledged that Mrs. Partin's prior emotional traumas, such as molestation in childhood and other instances of rejection, may have contributed to the impact of this incident. During her treatment with Dr. Goodin, Mrs. Partin exhibited major depression, panic attacks, weight loss in excess of twenty pounds, and difficulty sleeping. At the time of his deposition, Dr. Goodin believed that longterm treatment with medication had stabilized Mrs. Partin's condition, but he stated that her symptoms were not in remission. He testified that further progress was necessary before she could return to any work environment.
Dr. Paul Ware, who examined Mrs. Partin at the Bank's request, concurred in the diagnosis of a major depressive disorder, although he believed that Mrs. Partin had a tendency to portray herself as more impaired that she truly was. He also believed that her passive dependent personality contributed to her continuing disability.

Opinion
La.R.S. 23:1021(7)(b) (emphasis added) sets forth the claimant's burden of proof to recover benefits for a mental injury caused by employment-related stress:
Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.

Under this statute, a claimant must still prove that he has sustained "personal injury by accident" as required by La.R.S. 23:1031(A). Quillin v. Calcasieu Marine Nat. Bank, 96-685 (La.App. 3 Cir. 12/11/96); 690 So.2d 802. An "accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). In a "mental/mental" claim for compensation, "a mere showing that a mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to entitle the claimant to compensation." Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138, 147 (La.1989).
In determining whether work-related stress is extraordinary, this circuit has stated that "the analysis must focus on the *655 effect a particular stress might have on the particular injured employee." Lewis v. Beauregard Mem. Hosp., 94-318, p. 11 (La.App. 3 Cir. 11/2/94); 649 So.2d 655, 661. See also Henry v. Gulf Coast Cas. Ins. Co., 95-241 (La.App. 3 Cir. 1/31/96); 670 So.2d 307. Our holding in Lewis was based in part on Frederick v. Town of Arnaudville, 572 So.2d 316 (La.App. 3 Cir. 1990), writ denied, 575 So.2d 373 (La. 1991), in which we held that an employee with preexisting mental problems could recover benefits after an altercation with a supervisor that, by itself, would not have triggered coverage under the compensation act. We recently expressed our approval of Lewis in Clophus v. Taco Bell Corp./Hot `N' Now, Inc., 98-1794, p. 5 (La.App. 3 Cir. 3/31/99); 732 So.2d 692, 695, n. 1, by stating that "we still adhere to our view that analysis should be made on a case-by-case basis and must focus on the effect a particular stress might have on the particular injured employee."
This circuit stands alone in its subjective evaluation of employment-related stress. In Bryant v. Giani Investment Co., 626 So.2d 390 (La.App. 4 Cir.1993), writ denied, 94-0089 (La.3/18/94); 634 So.2d 852, the fourth circuit specifically rejected a subjective analysis, concluding that under such a test every stress that caused actual injury would be "extraordinary" and, thus, compensable. This result, according to Bryant, is inconsistent with the structure of La.R.S. 23:1021(7)(b), which contemplates that some mental/mental injuries would not be covered by workers' compensation. In reaching this conclusion, the fourth circuit stated:
With regard to mental illness or injury, the Legislature has chosen to give priority to the aim of protecting against nonmeritorious claims. It is the nebulous nature of mental illness or injury (as compared to the physical illness or injury) and the consequently heightened risk of feigned injury or illness, that caused the legislature to impose a more stringent burden of proof, and specific diagnostic requirements, upon claimants with alleged mental injury or illness.
Bryant, 626 at 392. The first and second circuits followed Bryant in Bass v. Farmer & Cheatham, 94-1281 (La.App. 1 Cir. 6/30/95); 658 So.2d 324, writ denied, 95-2289 (La.12/8/95); 664 So.2d 423, and Renter v. Willis-Knighton Medical Center, 28,589 (La.App. 2 Cir. 8/23/96); 679 So.2d 603. Although the fifth circuit initially cited Frederick, 572 So.2d 316, with approval in Proyer v. Monsanto Co., 606 So.2d 1307 (La.App. 5 Cir.1992), it, too, adopted Bryant in Jeansonne v. Wick Publishing Co., 94-462 (La.App. 5 Cir. 11/29/94); 646 So:2d 1212, writ denied, 94-2963 (La.2/3/95); 649 So.2d 405.
After reviewing the above jurisprudence, we now find ourselves in agreement with our colleagues of the other circuits. Although we have always agreed that La. R.S. 23:1021(7)(b) reflects a legislative intent to stringently condition an award of benefits for mental injury or illness, we now adopt the statutory analysis of Bryant, 626 So.2d at 393 (citations omitted) (footnote omitted):
By providing that a work related mental/mental injury will not be covered by worker's compensation "unless" it results from an "extraordinary stress", R.S. 23:1021(7)(b), the Legislature clearly contemplated that there would be instances of work-related mental/mental injuries not caused by an "extraordinary-stress" and, consequently, not covered by worker's compensation.
This latter point suggests that the "extraordinary" nature of the stress at issue should be determined, not from the point of view of whether the particular claimant found the stress to be extraordinary, *656 but whether an ordinary reasonable person of usual sensibilities would find the stress extraordinary. Otherwise, every stress that actually caused the injury would be considered "extraordinary" because no one, from their own personal perspective, would consider to be "ordinary" a stress that caused them mental injury or illness. Thus, to determine whether a stress is "extraordinary" by using the perspective of the particular claimant who suffered a mental/mental injury as a result of the stress at issue would be wholly inconsistent with the statutory scheme which contemplates non-covered mental/mental injury caused by work-related stress which is not "extraordinary".
This departure from our prior position, however, does not automatically place the results of Lewis, 649 So.2d 655, and Henry, 670 So.2d 307, in doubt. In Lewis, a hospital security chief with preexisting mental problems became disabled after a severe thunderstorm caused the failure of the hospital's main and back-up generators, placing the health of its patients at risk. A hospital administrator described this situation as a "colossal event." In Henry, the stress of a thirty-fold increase in claims brought on by Hurricane Andrew precipitated an insurance executive's mental breakdown. Even under an objective analysis, the stress created by these events could be considered "extraordinary" and not brought on by "general conditions of employment."
In the present case, the stress related to the employment was brought on by Mrs. Partin's demotion from a supervisory position to teller with almost a thirty-five percent reduction in pay. The stated reason for this action was that Mrs. Partin lacked managerial skills, yet she had served as a supervisor for thirteen years. Until this action, her personnel file reflected promotions and salary increases with no reprimands or other negative comments. The record also contains some dispute that, at the time of the demotion, the "forced balancing" incident was even mentioned. Mrs. Partin testified that she did not become aware that the $5.00 error had any involvement in the matter until her workers' compensation claim was referred to mediation. This testimony is supported, in part, by her medical records.
In Clophus, 732 So.2d at 697, we stated that "[i]t is not unexpected on a job that an employer will discuss job performance with an employee." See also Aucoin v. Dow Chemical Co., 98-1912, p. 4 (La.App. 1 Cir. 9/24/99); 745 So.2d 682, 884, writ denied, XXXX-XXXX (La.2/18/00); 754 So.2d 968, in which the first circuit recognized that "[a]ll employees are subject to workplace rules, the violation of which may produce unpleasant consequences. It is reasonable to presume violating established company policies may justify a stern reprimand and a permanent notation in one's personnel file." However, implicit in these cases is that the discipline imposed be commensurate with the infraction or violation. Further, we find that evaluating whether a stress is "extraordinary" under an objective standard still requires an analysis of the particular facts and circumstances presented.
Upon reviewing the record, we find that the Bank's action of demoting Mrs. Partin with a pay reduction of almost thirty-five percent did create an extraordinary stress related to the employment. The Bank does not claim that Mrs. Partin intentionally participated in a dishonest act, and from the record, it appears that she merely attempted to correct a $5.00 error between two tellers. The record further suggests that the Bank did not mention this incident as the reason for the discipline imposed until well after legal proceedings had begun. *657 When we consider the nature of this infraction and Mrs. Partin's personnel record, we find that a demotion to an entry position with such a drastic salary cut is far beyond what a reasonable person would expect as appropriate company discipline. That Mrs. Partin may have sustained prior emotional traumas may be relevant in evaluating the effect of the stress from the Bank's actions, but under the facts presented, we find Mrs. Partin's demotion and salary reduction to be "sudden, unexpected, and extraordinary" as required by La.R.S. 23:1021(7)(b). We further find that Mrs. Partin has established by clear and convincing evidence that she is temporarily and totally disabled and is entitled to workers' compensation benefits and medical expenses from August 6, 1996.

Decree
For the above reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Farmers and Merchants Bank.
AFFIRMED.
DOUCET, C.J., dissents in part and assigns written reasons.
YELVERTON, J., concurs in part and dissents in part for the reasons assigned by Chief Judge DOUCET.
THIBODEAUX, J., concurs for the reasons stated by Judge SAUNDERS.
COOKS, J., concurs in the result.
SAUNDERS, J., concurs and assigns written reasons.
WOODARD, J., concurs and assigns written reasons.
DECUIR, J., concurs in part and dissents in part for the reasons assigned by Chief Judge DOUCET.
PETERS, J., concurs and assigns written reasons.
AMY, J., concurs in part and dissents in part for the reasons assigned by Chief Judge DOUCET.
PICKETT, J., concurs in part and dissents in part for the reasons assigned by Chief Judge DOUCET.
DOUCET, C.J., dissenting in part.
While I agree with the majority that it is appropriate to use the objective reasonable person standard used by the other circuit courts of this state in evaluating employment related stress, I cannot agree that the stress experience by Ms. Partin in this case is extraordinary.
Even under an objective analysis, the stress created by these events was not "extraordinary" Rather, it was brought on by "general conditions of employment." Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138, 147 (La.1989)
Ms. Partin was demoted, in part, for failing to follow the Bank's procedures by not detecting or not reporting the discrepancy between her surprise audit and Ms. Childers' balance sheet. The Bank does not claim that Mrs. Partin intentionally participated in a dishonest act. Rather, Ms. Wilbanks testified that Mrs. Partin did not properly conduct the surprise audit. She agreed that managers often help tellers to balance their drawers by recounting money and reviewing paperwork for mistakes. However, she stated that this kind of help is not appropriate during an audit. As Ms. Wilbanks explained: "I don't know of any auditor that would ever go into any type of business, much less a bank that is entrusted with the public's money, that would find an error in someone's cash or in some figures and just say, it's okay, it was just an error."
*658 Although Mrs. Partin's demotion may have been sudden and unexpected, I believe that the workers' compensation judge erred in finding it to be extraordinary under these circumstances. In Aucoin v. Dow Chemical, Inc., 98-1912, p. 4 (La.App. 1 Cir. 9/24/99); 745 So.2d 682, 684, writ denied, XXXX-XXXX (La.2/18/00); 754 So.2d 968, the First Circuit stated that "[a]ll employees are subject to workplace rules, the violation of which may produce unpleasant consequences. It is reasonable to presume violating established company policies may justify a stern reprimand and a permanent notation in one's personnel file." In this case, Ms. Wilbanks testified that her superiors initially believed that the situation warranted dismissal of all three employees. However, they relented with regard to Ms. Partin after considering her tenure at the Bank. I believe that a demotion based upon an employee's failure to follow company procedures cannot be considered to create extraordinary stress under a reasonable person standard. Therefore, I dissent in part from the opinion of the majority.
SAUNDERS, J., concurs with reasons:
I concur in the result reached by Judge Sullivan's proposed opinion. However, I disagree that an objective standard should be used in analyzing a "mental" state. The law in the Third Circuit is not broken, let us not do harm under the guise of attempting to fix what is not broken. The analysis under the subjective standard is superior to the analysis under the objective standard in these cases. As the subjective standard has been used by this circuit for some time now, and it has yielded excellent results, I am opposed to changing our standard based on juris prudence foreign to this circuit. Accordingly, I concur in the result, but I disagree with the analysis utilized in the majority opinion.
WOODARD, J., concurring in part.
I concur with the majority's result but, respectfully, disagree with its decision to overrule our constant jurisprudence regarding our consideration of mental injuries in workers' compensation cases; namely, I disagree with its shift from a case by case, claimant to claimant, evaluation to an objective "reasonable man" standard.
Prior to the case sub judice, in Lewis v. Beauregard Mem'l Hosp.,[1] w held that "the analysis must focus on the effect a particular stress might have on a particular injured employee." While the majority deems it fit to overrule Lewis and its progenies, I believe that the Lewis analysis, which we followed in this circuit, rested upon the sound basis and fundamental principle that "an employer takes the worker as he finds him or her. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker."[2]
I find that the majority's shift, from a subjective standard to a "reasonable man" standard, is ill founded because it inappropriately discriminates as to the types of compensable injuries which an employee may sustain within the course and scope of his/her employment. In effect, this decision implements a double standard within our workers' compensation scheme in that it operates to treat, differently, workers who have sustained physical injuries from those who have sustained mental injuries.
I doubt that anyone would consider it to be fair to evaluate all employees' physical injuries based upon a "reasonable" or *659 "normal" physical makeup standard. Likewise, neither is it appropriate to so appraise a mental injury. In other words, our jurisprudence does not consider an employee's physical "baggage" to apply, in some cases, as a bar to recovery when such an employee was able to perform his/her physical employment demands before sustaining a work-related injury. For example, degenerative back conditions affect all of us in various degrees. When an employee with this ailment is injured on the job and becomes physically unable to resume work, the workers' compensation judge considers his degenerative condition to be only one element which he/she weighs in the decision-making process. The condition certainly does not apply as a bar to the employee's eventual compensation entitlement.
Individuals' mental makeups, like their physical makeups, are subject to degenerative changes or, stated otherwise, wear and tear, which, inter alia, can be spawned by their age, accidents, and experiences, some of which they received while working. The majority, in effect, casts aside as pariahs, employees, who sustain mental injuries within the course and scope of their employment, by implementing a standard which leaves no room for individualities. I view this approach as insensitive, not to mention patently unfair.
PETERS, J., concurs.
As the author of Lewis v. Beauregard Memorial Hospital, 94-318 (La.App. 3 Cir. 11/2/94); 649 So.2d 655, and because of the remedial purpose of the Workers' Compensation Act, I have been disinclined to adopt a "reasonable person" approach in determining whether a particular stress is extraordinary. However, upon reconsideration, I must, with reluctance, agree with the majority that the legislature intended that such an analysis be used in evaluating the nature of the stress.
In Lewis, 649 So.2d at 661, we held that "the analysis must focus on the effect a particular stress might have on the particular injured employee." I still find that the effect of the stress, i.e., whether a particular claimant in fact sustained a mental injury or illness, must be evaluated on a subjective basis, for it has long been held that "`an employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker.'" Id. at 660-61 (quoting Frederick v. Town of Arnaudville, 572 So.2d 316, 318 (La.App. 3 Cir.1990), writ denied, 575 So.2d 373 (La.1991)). Nevertheless, I am in agreement with the majority that the nature of the stress that caused the mental injury or illness, i.e., the employment condition in question, must be evaluated on a "reasonable person" basis.
I also agree that, under a "reasonable person" standard, the stress involved in the instant case was extraordinary. "Extraordinary" simply means something not ordinary, and the inquiry into the nature of the stress still requires an analysis of the facts and circumstances of the particular case. Indeed, I agree that appropriate company discipline should not be considered an extraordinary stress-any reasonable person would expect discipline commensurate with his transgression of company rules or policies. Additionally, as we stated in Clophus v. Taco Bell Corp./Hot `N' Now, Inc., 98-1794, p. 10 (La.App. 3 Cir. 3/31/99); 732 So.2d 692, 697, "[i]t is not unexpected on a job that an employer will discuss job performance with an employee."
However, in the instant case, a demotion and an almost thirty-five percent decrease in pay for an attempt to correct a $5.00 mistake made by a teller was not an ordinary *660 stress of employment. Even worse, Mr. Steed and Ms. Wilbanks did not even mention the $5.00 discrepancy at the time of the meeting but merely informed Ms. Partin that she lacked managerial skills. I find that the nature of the "discipline" for the minor alleged infraction was out of the ordinary realm of what a reasonable person would expect, particularly where Ms. Partin was not informed of the specifics of the discipline but was informed only that, after thirteen years of service in supervisory positions for the Bank, she lacked managerial skills. The fact that Ms. Partin sustained mental injuries that another person might not have sustained for the same actions does not go to the nature of the stress but to the effect of the stress, which should be considered on a subjective basis.
To conclude otherwise would impose the test for the tort of intentional infliction of emotional distress as the plaintiff's burden. That test is one in which a plaintiff must establish that the conduct of the defendant was extreme and outrageous, as set forth in White v. Monsanto, 585 So.2d 1205 (La. 1991). "Extraordinary" does not equate to "extreme and outrageous." While I do not find that the conduct was extreme and outrageous, I do find that it was extraordinary under the particular circumstances.
NOTES
[1] 94-318 (La.App. 3 Cir. 11/2/94); 649 So.2d 655, 661. (Emphasis added.)
[2] Id. at 660-61.