|,YELVERTON, Judge.
Kathy Citron appeals a workers’ compensation judgment dismissing her claim for benefits for a mental injury she claims she suffered while employed with Arch Paging Communications. For the following reasons, we affirm.
FACTS
Citron had worked in the communications industry for 16 years. On January 7, 1999, she went to work for Arch as a sales representative. Citron’s superiors at work were Huey Speyrer, general manager, and Tereena Gary, sales manager.
On the morning of May 28, 1999, Citron was running late for work because she was making calls on customers. Speyrer was meeting with Gary that morning. While Speyrer and Gary were meeting, Gary received a call from customer service that *867 Gulf Coast Electric, one of Citron’s accounts, had called to cancel its account because it was upset with the service it had received. After Citron arrived at the office, she went to Gary’s office to discuss some scheduling problems with her. Speyrer told Citron there was a problem and asked her to sit down.
What transpired over the next 10 to 15 minutes is what Citron claims caused her to suffer a compensable mental injury. As explained by the workers’ compensation judge, the facts of what occurred are not really in dispute. We quote from the trial judge’s reasons:
[Speyrer] advised [Citron] that the Gulf Coast account had just been lost, and that it was due to her poor servicing of the account. He understood that the account had been lost as a result of poor service, which was unusual in his experience.
Ms. Citron became defensive, believing that her work in general was being criticized. She believed the loss of the account was attributable |?to the prior relationship between the Gulf Coast representative and the Teletouch sales representative.
The discussion escalated as Speyrer wanted Citron to admit responsibility for losing the account, and Citron “was not going to give in to him.”
Speyrer is 6' 1" tall and weighs 230 pounds, and Citron is 5' 1#' tall and weighed approximately 115 pounds. The two were seated closely beside each other in swivel chairs during the incident.
As the discussion escalated, Speyrer was stern, unyielding and aggressive. His voice raised. He did not yell, make threatening gestures or curse her. He made no threatening remarks except to indicate at the end of the discussion that if a similar situation arose, the matter might be taken further. •
The discussion was terminated by Citron after 10 to 15 minutes. She rose from her chair and left the office building. She was humiliated and shaken by the incident. A coworker, Mona Penniston, met her at a nearby restaurant, and Citron tried to calm down. She returned and completed her inventory with Tereena Gary, then went home. She did not go on a Memorial Day Weekend trip as planned because of her emotional state.
Citron was depressed over the holiday weekend, and as the Tuesday workday approached, her anxiety increased, leading to an emergency room visit the morning of Tuesday, June 1. This led to her referral to Dr. Lily Hodges, a psychiatrist, who has continued to treat Citron through the time of trial. Citron has not worked since May 28,1999.
OPINION
A work-related mental injury is not covered by the Workers’ Compensation Act unless it results from sudden, unexpected, and extraordinary stress. La.R.S. 23:1021(7)(b). This court recently, in an en banc decision, determined that the “extraordinary” nature of the stress at issue should be determined from an objective viewpoint. Partin v. Merchants & Farmers Bank, 00-1113 (La.App. 3 Cir. 5/9/01); 783 So.2d 652, unit granted. In other words, would an ordinary reasonable person |,qof usual sensibilities find the stress extraordinary? Id. This determination requires an analysis of the particular facts and circumstances presented. Id.
In Clophus v. Taco Bell Corp./Hot ‘N’ Now, 98-1794, (La.App. 3 Cir. 3/31/99); 732 So.2d 692, 697, we stated that “[i]t is not unexpected on a job that an employer will discuss job performance with an em *868 ployee.” We agree with the workers’ compensation judge that this is what happened in this case.
There is no doubt that Citron was surprised by the encounter. Everyone acknowledged that she had no idea that this conversation was going to take place because Speyrer had just himself found out about the loss of the Gulf Coast account. Speyrer agreed that he raised his voice and was excited, but stated that he was not screaming. Speyrer explained that he was stern but not disrespectful. He testified that the conversation got a little more firm and a little more heated as it took place because he was frustrated.
Citron testified that she felt humiliated by this conversation and was concerned that she was going to be fired. However, Speyrer said he had no intent to fire her at the time, but agreed that he used the phrase, “the next time something like this happens” — when she left. He also admitted that he may have spit in the excitement of the conversation, but it was not deliberate and he did not spit on her.
We agree with the workers’ compensation judge that Citron proved that this conversation caused her mental injury. However, we also agree that it is not com-pensable under the Workers’ Compensation Law. Speyrer does not deny that he was upset with the loss of the Gulf Coast account and that he may have been excited in this conversation with Citron. While the atmosphere surrounding this 10 to 15 | ¿minute conversation may have been uncomfortable, we do not find that it rises to the level of extraordinary stress.
The judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed to Kathy Citron.
AFFIRMED.
SAUNDERS, J., dissents with written reasons.