800 So.2d 412 (2001)
Bruce GARDNER
v.
NABORS OFFSHORE CORPORATION.
No. 01-0773.
Court of Appeal of Louisiana, Third Circuit.
November 21, 2001.
Thomas E. Dunn, Dunn Law Firm, Mandeville, LA, Counsel for Bruce Gardner.
Brian M. LeCompte, Kevin Andrew Marks, Galloway, Johnson, Tompkins, New Orleans, LA, Counsel for Nabors Offshore Corporation.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD and MARC T. AMY, Judges.
AMY, Judge.
The claimant alleged injury as the result of a work-related accident. Although the employer initially provided treatment and workers' compensation benefits, the employer ultimately denied a diagnostic procedure recommended by the claimant's physician and, subsequently, terminated payment of benefits. The employer asserted that the benefits were terminated due to misrepresentations made by the claimant. The Office of Workers' Compensation found in favor of the employer. Included in its ruling was a determination that the claimant made representations sufficient for the defense of La.R.S. 23:1208. The claimant appeals. For the following reasons, we affirm.

Factual and Procedural Background
The claimant, Bruce Gardner, was an employee of Nabors Offshore Corporation at the time of the incident from which this workers' compensation matter arises. The parties stipulated that Mr. Gardner was in the course and scope of his employment at the time of the May 3, 2000 accident, which *413 involved Mr. Gardner jumping to the ground from a tractor. He alleges that he began to suffer back pain, and reported the incident. He was sent to the employer's choice of physician, Dr. Michael Duval, an orthopedic surgeon. Dr. Duval diagnosed a strain, and returned the claimant to light-duty work. Mr. Gardner returned to a light-duty position. He continued in this position until he complained he could no longer function due to pain. At some point, according to the claimant's testimony, he could no longer perform the light-duty work assigned and began to stay home rather than report to work.
On June 12, 2000, the claimant's employment with Nabors was terminated. Nabors contends that his employment was terminated due to his failure to report to a Transitional Educational Program (TEP) in Houma, Louisiana. Sue Duplantis, a program manager with F.A. Richard and Associates, who manages the workers' compensation account for Nabors, testified that she spoke with the claimant and informed him that he would be terminated for failure to report. Mr. Gardner denied that he was informed of this possibility. After the termination, Nabors provided workers' compensation benefits.
In July 2000, when the claimant's complaints of pain continued, he sought treatment from his choice of treating physician, Dr. John Cobb, an orthopedic surgeon. Dr. Cobb reported that he reviewed x-rays which revealed congenital defects at L5-S1 and an MRI which revealed small bulges at L3-4 and L4-5. He made similar observations on a myelogram and CT scan that were taken. Dr. Cobb's conclusion at that time was that the claimant suffered from post-traumatic lumbar pain syndrome. His second impression was that the claimant suffered from an anterior column injury. According to his deposition testimony, he found nothing that was compatible with a diagnosis of a herniated disc. Ultimately, Dr. Cobb recommended both steroid injections and that the claimant undergo a diskogram. The steroid injections prescribed by Dr. Cobb were approved by the insurance provider. However, the diskogram, recommended due to what Dr. Cobb described as inconclusive results, was denied by the insurer. Dr. Cobb explained that he felt the diskogram was necessary to confirm the condition and see whether the injury was significant enough to warrant doing something about.
Dr. Duval's deposition testimony indicates that he did not feel that the diskogram was warranted. Instead, Dr. Duval recommended that the claimant undergo a functional capacity evaluation due to issues of validity of complaints and, perhaps, a psychological overlay. He explained that, only after an FCE that revealed no symptom magnification, would he then proceed with a further work-up, including a diskogram. After a report indicated the existence of inconsistency with some physical maneuvers, Dr. Duval indicated that he no longer felt the claimant was a surgical candidate. He stated that he no longer had anything to offer the claimant other than rehabilitation.
This claim was filed in June 2000, after Mr. Gardner's employment was terminated. The claimant contended that the termination was due to his compensation claim. During the course of litigation, the claimant's deposition was taken in February 2001. Following the deposition, the claimant's workers' compensation benefits were terminated, with the employer alleging a La.R.S. 23:1208 defense due to what it contends were the claimant's inaccurate denials of prior injuries and work-related accidents. Sue Duplantis, the manager handling the compensation claim, stated that following the deposition, she relied on *414 advice of counsel and terminated the benefits.
At the hearing on this matter, the parties put at issue whether the employer was arbitrary and capricious in terminating the claimant's benefits and in denying the diskogram and future surgery. Penalties and attorney's fees were sought in this regard. Further, whether an emergency room visit on September 19, 2000 was work-related. Finally, the parties contested whether the claimant violated La.R.S. 23:1208, thus forfeiting any workers' compensation benefits.
The workers' compensation judge found in favor of the employer, concluding that the claimant violated La.R.S. 23:1208, forfeiting his right to workers' compensation benefits. Despite the finding of forfeiture, the workers' compensation judge decided the remaining issues. The workers' compensation judge concluded that the employer was not arbitrary, capricious, or without cause in refusing to approve a diskogram or future surgery, determined that the claimant failed to prove that the emergency room treatment received on September 19 was work-related and, finally, found that the termination of the claimant's employment was not due to his compensation claim.
The claimant assigns the following as error:
1. The trial court's judgment that the employer was not arbitrary and capricious in its termination of the claimant's benefits and/or its refusal to authorize a diskogram is contrary to the weight of the law and evidence; hence, the judgment in this respect was clearly wrong and should be reversed.
2. The trial court erred in holding that the employer's termination of the claimant from employment was not related to his workers' compensation claim.
3. The trial court erred in holding that the claimant violated LSA R.S. 23:1208 and thereby forfeited any rights to workers' compensation benefits.
4. The trial court erred in finding that the claimant was able to perform light to sedentary work.
5. The trial court erred in allowing the FCE to be admitted into evidence.
6. The trial court erred in allowing the Occupational Therapist to testify and/or erred in giving the testimony credible weight.

Discussion
La.R.S. 23:1208
Due to the statute's preclusive nature, we turn first to the workers' compensation judge's finding that the claimant's entitlement to benefits under the workers' compensation provisions was forfeited due to operation of La.R.S. 23:1208. The statute provides, in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The Louisiana Supreme Court has determined that the plain wording of Section 1208 requires only that: "1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or representation be made for the purpose of obtaining workers' compensation benefits." Resweber v. Haroil Const. Co., 94-2708, p. *415 14 (La.9/5/95); 660 So.2d 7, 16. In considering this standard, however, we are mindful that the forfeiture remedy is a harsh one and, thus, "statutory forfeiture must be strictly construed." Wise v. J.E. Merit Constructors, Inc., 97-0684, p. 7 (La.1/21/98); 707 So.2d 1214, 1218. Furthermore, the determination of whether an employee forfeited benefits is factual in nature and, accordingly, is one that will not be reversed on appeal, absent manifest error. KLLM, Inc. v. Reed, 00-295 (La. App. 3 Cir. 10/11/00); 771 So.2d 728.
Regarding the forfeiture argument, the workers' compensation judge was presented with evidence that, at visits with the physicians, in his response to interrogatories, and at his pre-trial deposition, the claimant consistently denied prior injury or incidents potentially relevant to his work-related condition. However, evidence revealed prior complaints, hospitalizations, a previous altercation, and an assignment to light-duty with a previous employer, an employer the claimant had not previously revealed. At the time of trial, however, his memory was refreshed as to these events. In finding La.R.S. 23:1208 applicable in this case, the workers' compensation judge reviewed the evidence of failure to report prior injuries and ultimately rendered lengthy reasons for ruling, explaining:
The claimant's deposition was taken February 2, 2001, wherein he repeatedly made material misrepresentations under oath about prior injuries and treatment for the same. Following the claimant's deposition, the defendant obtained medical records from Iberia Medical Center which revealed two prior instances wherein he was treated for work-related low back injuries and a treatment for a shoulder injury he sustained in a physical altercation. The claimant denied any prior back injuries and stated he had never injured his shoulder. The claimant denied any prior on-the-job injuries, or even hurting himself in a fight. The claimant further testified he had never sought treatment for such injuries.... He testified he understood he was under oath, and that he was testifying in an effort to obtain workers' compensation benefits. At trial, the claimant again testified he had understood at the time of the deposition that he was testifying in an effort to obtain workers' compensation benefits. The claimant also made false statements about his medical history to both Dr. Duval and Dr. Cobb. Again, the claimant testified at trial he understood representations made to those physicians were made in an attempt to obtain workers' compensation benefits. Once the defendant learned of the claimant's testimony, the defendant terminated his benefits.
This Court finds the claimant's trial testimony shows he understood representations made to his treating physicians, in answers to the defendant's interrogatories and during his deposition were made for the purpose of obtaining workers' compensation benefits. The claimant testified he understood he was under oath while answering his interrogatories and during his deposition. The claimant tried to justify his number of misrepresentations by stating he had forgotten about his prior injuries, illnesses, and treatment for the same. This Court finds the claimant's testimony to be incredible.
On direct examination, the claimant had no problems recalling details of his prior work history including working for Breaux Brothers. While working for Breaux Brothers the claimant received a back injury which prompted him to seek medical attention and be placed on light duty for one week. However, the claimant did not recall this work-related *416 injury or his week of light duty. Additionally, he did not recall even being employed for Breaux Brothers in his deposition. The claimant recalled several other instances at trial which he did not recall at his deposition, answering interrogatories, or making representations to his physicians. The claimant also sustained another work-related back injury while employed with his father's janitorial service. He again sought medical treatment, which resulted in being hospitalized for three days with gastrointestinal problems. The claimant was also hospitalized as the result of a fight. The claimant testified he was jumped by three individuals and beat to the point of hospitalization. When confronted with these significant events at trial, the claimant testified he did not remember the events at the respective instances of inquiry, but when reminded of the events, it came back to him.
Despite the foregoing alleged lapses in memory concerning significant events, the claimant testified that his memory with respect to the substance of a telephonic conversation with Ms. Duplantis was clear. Ms. Duplantis testified she informed the claimant that failure to report to TEP would result in termination. The claimant not only testified that no represen[ta]tive for the defendant informed him of such, but following Mr. Duplantis' testimony, the claimant took the stand again to state under oath that Ms. Duplantis never told him the consequences of failing to report to TEP. The claimant's memory cannot be justified by coincidence, but rather gives rise to the inferences he has been making false statements to obtain workers' compensation benefits.
This Court finds the defendant has met its burden of proof that the claimant willfully made false statements or representations. Following the defendant's prima facie showing claimant's violation of LSA-R.S. 23:1208, the burden shifted to the claimant. This Court finds the claimant has failed to respond with adequate justification for his misrepresentations, and therefore, this Court finds that the claimant is in violation of LSA-R.S. 23:1208 and thus forfeits any right to workers' compensation benefits.
After considering these reasons in light of the evidence contained in the record, we find no manifest error in the result reached by the workers' compensation judge.
Indeed, in his deposition, the plaintiff denied prior injuries, workers' compensation claims, or hospitalization. According to medical records and the defendant's testimony at trial, however, these denials were clearly untrue. Furthermore, the credibility determination made regarding the claimant's inability to recall until the time of the hearing is clearly supported as several of the events the claimant could not recall were significant in nature. For instance, the claimant denied back injuries or workers' compensation claims, but had previously been assigned to light duty for a back injury in 1993 and had sought medical attention for complaints of back pain in 1990. He denied any hospitalization, but records reveal three days of hospitalization in 1985, at which time he underwent a battery of tests. Also, he denied any prior physical altercations, but at trial admitted that he could, in fact, recall an altercation which apparently involved injuries significant enough to prompt medical attention. Clearly, evidence of these statements/misstatements regarding what must have been memorable events, permits the workers' compensation judge to find the claimant's testimony lacked credibility and were willfully made. Finally, the nature of events that were not disclosed upon specific questioning, *417 support a finding that the representations were made for the purpose of obtaining benefits. As the record reveals no error in the determination that the elements of La.R.S. 23:1208 were satisfied, we find this assignment to be without merit.
We further observe that the workers' compensation judge rendered extensive written reasons, addressing each of the issues presented for consideration. The claimant assigns as error and briefs these issues. However, it is clear that these remaining issues of entitlement to benefits, refusal of services, and the reasonableness of the employer's action no longer merit consideration.[1] In KLLM, Inc., 00-295; 771 So.2d 728, a panel of this court explained that, after La.R.S. 23:1208 is found to be applicable and benefits are forfeited, any remaining controversy as to arbitrary and capricious denial of benefits or the untimely paying of benefits is rendered moot.[2] Accordingly, we do not address the remaining assignments of error.

DECREE
For the foregoing reasons, the decision of the Office of Workers' Compensation is affirmed. All costs of this appeal are assigned to the claimant, Bruce E. Gardner.
AFFIRMED.
SAUNDERS, J., concurs and assigns written reasons.
WOODARD, J., concurs.
SAUNDERS, J., concurring with reasons.
While I agree with the result of the opinion, I would not find the same based on La.R.S. 23:1208. Rather, I would look to the merits of the case and affirm.
I recently had occasion to retrieve from the recesses of an aging file cabinet documents which evidence litigation in which I was the attorney of record some ten years ago. It is apparent from these documents that I interviewed a client in my office, filed pleadings on this clients behalf, attended court, questioned witnesses, prepared a somewhat unusual judgement and submitted same to the court. What is significant today is that I do not remember any of this! I do not remember the client, the interview, the pleading, the hearing or preparing the judgement. Today I could not pick this client out of a lineup of unknown persons. This despite the fact that I am considered to have an exceptional memory by people who cannot name the 1952 Cleveland shortstop or the male lead in "The Blob."
While I do not have any memory of the referenced client or case, I do remember full well an undergraduate class in which we were told that within ten years we would forget 90% of what we learned in undergraduate school. However, I do not remember the name of the instructor, any *418 classmates, the subject, or any other content of the class. I make these observations to suggest that "memory" is a most peculiar and extremely individualistic thing, and when a person explains a falsehood by pleading a memory lapse, it is very hard for me to say that I cannot accept this explanation.
Having said this, I would suggest that in the context before us our jurisprudence also suggests that except in the most extreme circumstance a person should not be stripped of standing in court for testimony that can as easily be accounted for by a "lapse of memory" explanation as by a "willful intent to deceive" explanation.
In Beddes v. Qwik Pantry, 29,657 (La. App. 2 Cir. 6/18/97); 697 So.2d 695, the statute did not bar receipt of benefits by a claimant who gave an inaccurate medical history regarding the date of an accident where claimant's entitlement to benefits did not depend on the date of said accident.
In Carver v. U.S. Copy, Inc., 96-611 (La.App. 5 Cir. 3/25/97); 694 So.2d 423, the claimant's misrepresentations regarding an arrest for possession of marijuana and whether he had received benefits for a previous injury did not result in forfeiture of workers' compensation benefits as the Claimant's misrepresentations were considered inconsequential and therefore not made for the purpose of obtaining benefits.
In Gagnard v. Venture Mktg. Corp., 93-1655 (La.App. 3 Cir. 10/05/94); 643 So.2d 460, it was held that the Claimant did not make a material misrepresentation for the purpose of obtaining benefits when he complained of pain and indicated that he was unable to lift anything heavier than a gallon of milk, although Claimant was seen helping his father-in-law lift crossties from a truck. The claimant's employer purchased the crossties from Claimant's father-in-law which left Claimant with no choice but to either assist his father-in-law in unloading the crossties or lose the sale. In Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 05/14/97); 696 So.2d 73, we held that Claimant's false statement was made thoughtlessly and inadvertently, as apposed to willfully. When Claimant first reported his accident to the emergency room personnel, he indicated that he had a prior knee injury, and testified that the discrepancy in his deposition as to previous medical care was not done intentionally.
In Ball v. Wilco Marsh Buggies, Inc., 97-72 (La.App. 5 Cir. 05/28/97); 695 So.2d 1075, the Claimant's inconsistent statements at trial were not "willful, false misrepresentations," and, thus, did not support finding that Claimant had forfeited his rights to recover benefits based on misrepresentation, where records showed that Claimant did in fact suffer a workrelated accident and injury for which he was entitled and did receive workers' compensation.
In Fisher v. Westbank Roofing, 95-964 (La.App. 5 Cir. 02/27/96); 670 So.2d 1328; writ denied 96-0809 (La.05/10/96); 672 So.2d 926, Claimant's statements at trial, which were contradicted by other witnesses' testimony, and Claimant's inaccurate statements regarding his use of marijuana were not willful false statements, so as to disqualify Claimant from receiving workers' compensation benefits.
In J.E. Merit Constructors, Inc. v. Butler, 97-361 (La.App. 5 Cir. 09/30/97); 700 So.2d 1111, Claimant did not forfeit rights to benefits, even though he denied to the claims adjuster and one physician that he had prior back problems, while he had in fact suffered minor neck and back injuries in an automobile accident. Claimant testified that he thought the adjuster and physician were only inquiring about serious *419 back problems, and subsequently disclosed prior problems to physician when asked in more detail.
In Clophus v. Taco Bell Corp./Hot `N' Now, Inc., 98-1794 (La.App. 3 Cir. 03/31/99); 732 So.2d 692, Claimant did not willfully attempt to conceal prior claim for purpose of obtaining benefits, and thus, employer was not entitled to sanctions pursuant to anti-fraud statute. Although Claimant's deposition failed to mention prior job, prior mental problems, and prior claim, Claimant testified that stress had caused memory problems and, moreover, Claimant's answers to interrogatories disclosed a prior claim.
Moreover, in Boise Cascade Corp. v. Dean, 99-1356, (La.App. 3 Cir. 5/3/00); 767 So.2d 76, 82-88, I have made some observations which I repeat here.
In Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73, writ denied, 97-1582 (La.10/17/97); 701 So.2d 1330, after finding the claimant did not act willfully in misrepresenting a prior knee injury, this court, on its own motion, found the hearing officer did not have subject matter jurisdiction over the adjudication of the claim of willful misrepresentation, i.e. fraud. We provided the following discussion, which I would adopt in toto and apply to the matter before us:
Wholly apart from the substantive errors made by the hearing officer, on our own motion, we notice the want of the lower tribunal's subject matter jurisdiction as it pertains to a claim for forfeiture of benefits as provided for in La. R.S. 23:1208.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ.P. art. 1. Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of demand, the amount in dispute, or the value of the right asserted. La.Code Civ.P. art. 2. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. La.Code Civ.P. art. 3. Unlike other exceptions, the exception of subject matter jurisdiction is an issue that cannot be waived or conferred by the consent of the parties. Tran v. Schwegmann's Giant Super Market., 609 So.2d 887 (La.App. 4 Cir.1992). The exception of subject matter jurisdiction can be raised at any stage of a proceeding, and an appellate court may raise the exception on its own motion. Colacurcio, III v. Ledet, 94-1798 (La.App. 4 Cir. 9/28/95); 662 So.2d 65.
Effective November 7, 1990, La. Const. art. V, § 16 was amended to provide for original jurisdiction of all civil and criminal matters in district courts, except as otherwise authorized by the constitution or "except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters." Sampson v. Wendy's Management, Inc., 593 So.2d 336, 337 (La.1992). Consistent with this constitutional provision, the office of worker's compensation was granted original, exclusive jurisdiction over claims for any compensation or benefits, La.R.S. 23:1310.3. However, as the Supreme Court has observed such subject matter jurisdiction was not granted to adjudicate disputes or obligations imposed by the workers' compensation act that fall beyond "benefit and penalties directly associated with the employee's work-related injury and his receipt of workers' compensation benefits. See *420 LSA-R.S. 23:1291 et seq." Sampson, 593 So.2d at 339.
La.R.S. 23:1208, the provision upon which the hearing officer relied, provides in pertinent part:
§ 1208 Misrepresentations concerning benefit payments; penalty; civil immunity
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation....
. . . .
E. Any employee violating this section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
In Resweber v. Haroil Const. Co., 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, the supreme court outlined requirements for a forfeiture of benefits under La.R.S. 23:1208: a false statement or representation willfully made for the purpose of obtaining or defeating any benefit or payment. Significantly, La.R.S. 23:1208 has been construed to represent an absolute bar to compensation benefits, regardless of whether the misrepresentations pertain to the injury for which an injured employee seeks benefits.
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries.

Resweber v. Haroil, 660 So.2d at 12.
The claim itself is not contingent upon whether a potential claimant falls within the ambit of the workers' compensation act (is injured by an accident during the course and scope of his employment), or is based on the merits of the claim before the hearing officer, (sic) is strictly concerned with any misrepresentation made by a claimant.
Thus, it appears that when an employee violates La.R.S. 23:1208, his actions are tortious in nature (the conduct may even be considered criminal in nature), rather than a workers' compensation matter. At best, the conduct prohibited by La.R.S. 23:1208 presents a cause of action in tort for fraud or deceit.
In Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979), our Supreme Court recognized that La.C.C. Art. 2315 affords a broad ambit of protection for persons damaged by intentional and negligent acts of others. Further, Louisiana courts have long recognized that a party who is injured by the fraud and deceit of another has a cause of action against the offending party for damages. Swann v. Magouirk, 157 So.2d 749 (La. App. 2nd Cir.1963); White v. Lamar Realty, Inc., 303 So.2d 598 (La.App. 2nd Cir.1974). In Altex Ready-Mixed Concrete Corp. v. The Employers Commercial Union Insurance Company et al., 308 So.2d 889 (La.App. 1st Cir.1975), writ refused, 312 So.2d 872 (La.1975), the court stated the following:
"Fraud exists if it can be shown that material misrepresentations have been made by one party designed to deceive another, ... to cause loss or inconvenience to the other."
In Coleman v. Sheraton Pierremont, 25,452 (La.App. 2 Cir. 1/19/94); 631 So.2d 50, 53, citing Sampson v. Wendy's Management, Inc. 593 So.2d *421 336 (La.1992), the supreme court noted "that a retaliatory discharge cause of action found in the chapter on worker's compensation was not a worker's compensation matter to be heard by administrative hearing officers, since the cause of action was in tort and/or a claim for civil penalties." Following the reasoning in Sampson, we find that the penalties meted out by the hearing officer in accordance with La.R.S. 23:1208 against claimant clearly were not "directly associated with the employee's work-related injury," Sampson, 593 So.2d at 339. Instead, the nature of the cause of action embodied in La.R.S. 23:1208 is tortious/delictual in nature, falling beyond the jurisdictional authority of the hearing officer as authorized by La. Const. Art V, § 10(A)(B), § 16(A), La.R.S. 23:1310.3. Clearly, the misconduct characterized by La.R.S. 23:1208 falls within a well recognized area of tort law (the tort of fraud/deceit), and thus we conclude that the hearing officer and the Office of Workers' Compensation lacked jurisdiction to impose sanctions under La.R.S. 23:1208. Id., at 76-78. (Footnotes omitted.)
I feel that the WCJ in the matter sub judice had no subject matter jurisdiction to determine whether this plaintiff committed a fraud, civil or criminal. But I would do more than find simply a lack of subject matter jurisdiction, as we did in Grant, 696 So.2d at 76, to reach the more fundamental problem with an administrative officer using the La.R.S. 23:1208 to adjudge this matter.
First, a consideration of La.R.S. 23:1208 in depth is appropriate. In Grant, we failed to discuss Subsection (C) of La.R.S. 23:1208, which provides the penalties for making a false statement or representation under Subsection (A). Subsection (C) provides:
(1) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of ten thousand dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or fined not more than ten thousand dollars, or both.
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
(3) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of less than two thousand five hundred dollars, shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained," for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
The supreme court most recently discussed the penal nature of La .R.S. 23:1208 in Resweber. Discussing the history of La.R.S. 23:1208, the court provided:
The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the *422 penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.

Id., at 12-13.
Footnote four cited in the above excerpt of Resweber explains:
Subsequent to the alleged misrepresentations in the present cases, the legislature again amended Section 1208 to provide more severe criminal penalties ranging from six months imprisonment where the value of benefits is less than two thousand dollars, and up to ten years, where the value equals or exceeds ten thousand dollars. The amendment also increased the civil penalties to not less than five hundred dollars nor more than five thousand dollars. 1993 La. Acts No. 829.

Id., at 17.
While I agree that La.R.S. 23:1208 clearly has the goal of discouraging the use of fraud to manipulate the workers' compensation system, the penalizing method of that discouragement belies a most fundamental problem with the statute which has thus far remained ignored. La.R.S. 23:1208 is unconstitutional in that it violates the procedural due process guarantee of the U.S. Const. Amends. V, XIV and La. Const. art. I § 2 (1974). Indeed, courts of appeal have been historically reluctant to raise constitutional issues on their own motions. However, Georgia Gulf v. Board of Ethics for Public Employees, 96-1907 (La.5/9/97); 694 So.2d 173, clearly recognizes the constitutional right of a court of appeal to raise and decide constitutional issues on its own motion. The Georgia case provides the following discussion:
From the outset, the Ethics Commission asserts that the due process issues were not raised in the administrative proceedings, were not assigned as error on the appellate level, and are not properly before us. We disagree.
. . .
Moreover, La.Code Civ.P. art. 2164 provides that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal." As noted in the Official Revision Comments under Art. 2164, the appellate court has "complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below." In a similar vein, Uniform Rules of Louisiana Court of Appeal, Rule 1-3 provides that even in the absence of an assignment of errors, the appellate court can review such issues if the "interest of justice clearly requires...."
Under the codal authorities cited herein above, it is clear that the appellate court had the right to consider the issue of due process even though there was no assignment of error in that regard. Accordingly, we find that the due process issue is also properly before us.

Id., at 175-76. (Emphasis added.)
In considering its constitutionality, a review of the evolution of the statute is helpful. Acts 1914, No. 20, § 37(1) was the original enactment setting forth the foundation for the modern La.R.S. 23:1208. The earlier section read:
If for the purpose of obtaining or defeating any benefit or payment under the provisions of this act, either *423 for himself or any other person, any person willfully makes a false statement or representation, he shall be guilty of a misdemeanor and upon conviction thereof shall be fined not exceeding five hundred dollars or imprisoned not exceeding twelve months, or both, in the discretion of the Court; and an employee from and after such conviction shall cease to receive any compensation under this act.
The statute remained substantially unchanged until 1989 when the "guilty of a misdemeanor ... conviction" language was removed and the last sentence was changed to read: "Any employee violating this Section shall in addition forfeit any right to compensation benefits under this Chapter." Acts 1989, No. 454, § 5. Significant, however, is that the language indicating that a fraudulent person shall be subject to not more than a five hundred dollar fine or not more than twelve months in prison remained unchanged. Similarly, in 1992, the statute was re-structured and the possibilities for civil penalties were added, but the penal provision remained the same. In the years following, further amendments were made to the statute not pertinent to this discussion.
Interestingly enough, the supreme court in Resweber, 660 So.2d 7, acknowledged that the legislature removed "the necessity of a criminal conviction as a prerequisite for a claimant's forfeiture," which it once required, but the Resweber court failed to pause at the result of removing the conviction requirement while keeping the felony and misdemeanor penalty sections. Id., at 12. On the contrary, the supreme court embraced the ease of punishing without conviction. Indeed, it certainly is easier to convict a claimant in a civil proceeding. However, it is painfully clear that such a convenience can only run far askance of constitutional objectives.
In its discussion, the Resweber court cited a law review article to support the legislatures intent of making La.R.S. 23:1208 easy "to enforce and to make the penalties stiffer." Id. Yet, a look at the article reveals an unpersuasive oneliner which states: "The sanction for misrepresentations concerning benefit payments is changed, probably to make it easier to prove." H. Alston Johnson, Workers' Compensation, Developments in the Law, 50 La.L.Rev. 391, 401 (1989). In his article, Mr. Johnson footnotes the language change of La.R.S. 23:1208 which requires a violation not a conviction.
While I do not mean to cast doubt on the legislature's intent to make fraud easy to prove; nevertheless, the shortsightedness of the change from "conviction" to a mere violation is simply constitutionally unacceptable.
Clearly, it is the very criminality of the statute that places it in peril. In Grant, 696 So.2d 73, we discussed fraud as a civil tort matter. But a civil tortfeasor does not risk imprisonment, so it is now appropriate to consider when fraud becomes a criminal matter. A sanction is penal when it is "punishable; inflicting a punishment; containing a penalty, or relating to a penalty." BLACK'S LAW DICTIONARY 1132 (6th ed.1990). A crime is any conduct so defined by the Criminal Code, by other acts of the legislature, or by the Louisiana Constitution. La.R.S. 14:7. A felony is "any crime for which an offender may be sentenced to death or imprisonment at hard labor," while a misdemeanor is any crime other than a felony. La.R.S. 14:2(4) and (6). The Code of Criminal Procedure adds to the definition of misdemeanor by noting that a misdemeanor "includes the violation of *424 an ordinance providing a penal sanction." La.Code Crim.P. art. 933.
La.R.S. 23:1208 unquestionably provides for severe criminal sanctions, particularly where in Subsection (C)(1) and (C)(2) an offender may be subject to, by definition, felonious imprisonment at hard labor for up to ten or five years, respectively. The penal nature of the statute, placed in the workers' compensation scheme to be used at the behest of a hearing officer, is the essence of the glaring disjunct between the procedural means and substantive ends of La.R.S. 23:1208 and the constitutional concerns invoked by criminal proceedings.
The fundamental concerns that arise in a criminal setting are absent in civil matters, hence the need for the added procedural devices to safeguard constitutional rights of the accused.
In a criminal case, unlike in a civil setting, procedural protections sufficient to afford due process are provided through the criminal procedural rules. The defendant's privacy interests are protected from erroneous deprivation by adequate criminal procedural safeguards such as the grand jury indictment, the right to seek a preliminary examination, his ability to move for a bill of particulars and discovery, and the contradictory hearings on motions such as was had in the present case.

State v. Pierre, 606 So.2d 816, 820 (La.App. 3 Cir.), writ denied, 607 So.2d 568 (La.1992).
La. Const. art. I, § 13 provides the following protections:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.
La. Const. art. I, § 14 provides that the "right to a preliminary examination shall not be denied in felony cases except when the accused is indicted by a grand jury." Section 15 of our constitution provides for how criminal proceedings may be initiated and guarantees that no person shall be subject to double jeopardy. Further, Section 16 of Article I sets forth the provisions for the right to a fair trial in a criminal proceeding while Section 17 ensures the criminally accused the right to a jury trial.
These Sections of Louisiana's Constitutional Declaration of Rights have no counterpart in civil proceedingslogically so; the possibility of loss of personal liberty is not at stake. Further, as a natural consequence of the kinds of penalties criminal statutes impose, we must not fail to mention the sharp distinction between the burden of proof in a civil matter and that of a criminal matter. In ordinary civil actions, a plaintiff must prove each element of his case by a mere preponderance of the evidence. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). In criminal matters, all of the evidence must satisfy a rational juror that the defendant is guilty beyond a reasonable doubt-a higher burden of *425 proof. State v. Meshell, 567 So.2d 1181 (La.App. 3 Cir.1990).
In sum, with La.R.S. 23:1208 as applied in the present matter, Defendant enjoys none of the procedural safeguards of a criminal proceeding; nevertheless, he is subject to the sanctions of a penal statute. La.R.S. 23:1208 applied as it is broadly written, in disregard of constitutional due process, is nothing more than a criminal statute masquerading in civil garb, designed to discourage fraud in workers' compensation matters with over-broad penalization.
I make one further observation. Even if La.R.S. 23:1208 would not be violative of a beneficiary's procedural due process rights, it would violate his substantive due process rights. Even had the face of de minimis fraud reared its ugly head in a case involving extreme physical injuries such as we are here faced with, the question arises of excessive and disproportionate punishment. La.Code Crim.P. art. 894.1 and U.S. Const. Amend. VIII. State v.. Crowder, 31,331, p. 2 (La.App. 2 Cir. 9/23/98); 718 So.2d 1061, 1063, explains:
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Caraway, 28,769 (La. App.2d Cir.10/30/96), 682 So.2d 856. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Caraway, supra.
The harm Plaintiff suffered by Defendant's false deposition testimony, which alone does not rise to the kind of fraudulent behavior contemplated by the statute, is so grossly out of proportion to the harm suffered by Defendant if he were to have all compensation benefits removed, leaving him maimed and without rehabilitation, that it readily and harshly shocks this reviewer's sense of justice.
For these reasons, I cannot agree that it was proper to forfeit benefits in the present case based on La.R.S. 23:1208. I find that Claimant's inconsistent statements at trial were not "willful, false misrepresentations," made for the purpose of obtaining workers' compensation benefits. Furthermore, I seriously question the constitutionality of La.R.S. 23:1208. Accordingly, Claimant should not be forced to forfeited his rights to recover benefits based on La.R.S. 23:1208. Because this case should not be decided based on La.R.S. 23:1208, I shall review the merits of the claim to determine whether Claimant is entitled to benefits.

Standard of Review
The trial court's factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98); 708 So.2d 375. "The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one." Thibodeaux v. Sunland Constr., XXXX-XXXX, p. 3 (La.App. 3 Cir. 4/4/01); 782 So.2d 1203, 1206. When a conflict in testimony exists, "reasonable inferences of fact should not be disturbed upon review." Id.

Termination of Claimant's benefits
At trial, the workers' compensation judge was faced with conflicting testimony by Claimant's treating physicians. Dr. Duval testified that based upon his evaluation, the Claimant was not a surgical candidate and a discogram was not necessary. Specifically, the MRI ordered by Dr. Duval *426 revealed minor disc protrusion at L3-4 and L4-5, but no nerve root impingement or herniations. Moreover, Claimant had a normal bone scan, and a myelogram and post-myelogram CT revealed only minimal bulging as indicated in the MRI. Claimant further underwent an EMG nerve conduction study, which suggested lumbar radiculopathy at S1, but nothing at L3-4 or L4-5 where his injury exists. Based on these test and his treatment of Claimant, Dr. Duval testified that Claimant was not a surgical candidate and a discogram was not necessary. Notwithstanding the findings by Dr. Duval, Dr. Cobb testified that based on his evaluation, a discorgram was necessary to determine the condition of Claimant's back. In support of his conclusion, Dr. Cobb testified that Claimant had undergone several diagnostic tests to determine the source of his pain and none were conclusive. Dr. Cobb further testified that a discogram would be necessary to properly diagnose Claimant.
In finding that the Defendant was not arbitrary and capricious in terminating Claimant's benefits and/or refusal to authorize a discogram, the workers' compensation judge noted the results of both the functional capacity evaluation and the opinion of Dr. Montz. The functional capacity evaluation ("FCE") indicated that Claimant displayed illness behavior and symptom magnification. Based on the number and nature of the inconsistencies, the FCE evaluators felt that the Claimant was magnifying his pain symptoms. Furthermore, Dr. Duval testified that because a discogram was largely based on subjective findings, such a procedure would yield unreliable results given Claimant's propensity to exaggerate his symptoms. Finally, the workers' compensation judge considered the testimony of Ms. Duplantis (Defendant's claims manager) who read into the record the additional opinion issued by Dr. Montz. Ms. Duplantis testified that she sent the entire file for review in order to get a second opinion on whether a discogram was warranted. Dr. Montz, an orthopedist, reviewed the file and determined that a discogram was not necessary.
Ultimately, the trial court found that based on the opinion of Dr. Duval, the FCE report, and the second opinion issued by Dr. Montz the Defendant was not arbitrary and capricious in the refusal to authorize the discogram. Upon review of the record, I find that the workers' compensation judge properly considered the evidence presented and reasonably found in favor of the Defendant. Accordingly, I would affirm the trial court's finding that Defendant was justified in denying the discogram procedure.

Light Duty Work
After considering the evidence presented, the workers' compensation judge found that the Claimant was at maximum medical improvement and capable of returning to work at a light duty capacity. Accordingly, the trial court ruled that Claimant was not entitled to temporary total disability benefits. Upon review of the record, I find no manifest error in this finding.
The trial court considered the testimony of Dr. Stokes, a vocational rehabilitation counselor who testified that based upon his evaluation, the Claimant was capable of returning to work at a light or sedentary level. Additionally, both Dr. Cobb and Dr. Duval testified that the Claimant should have reached maximum medical improvement. Moreover, the court noted that the Claimant presented no objective medical evidence that he is totally disabled. Based on the forgoing, the trial court found that defendant met its burden of establishing suitable alternative employment and that the claimant is no longer entitled to total disability benefits.
*427 On appeal, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Thibodeaux, XXXX-XXXX; 782 So.2d at 1206. In light of the evidence presented, I find that the conclusion reached by the trial court regarding the Claimant's ability to return to light duty work to be reasonable. Accordingly, I would affirm the finding that the Claimant is not entitled to temporary total disability benefits.

Termination of Employment
In an effort to bring employees back to work, Defendant established a Transitional Education Program ("TEP"). The TEP is a light duty program where Defendant allows injured employees to work and obtain their full salary. In light of his injury, Claimant was transferred to TEP and informed that his failure to report would be grounds for termination. At trial, Claimant testified that no representative of Defendant informed him of the consequences of failing to report to TEP. The trial court found that Claimant's testimony had little credibility and that his allegations of wrongful discharge were unjustified.
As this court has recognized, deference is given to the factfinder's determinations regarding the credibility of witnesses "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listeners's understanding and belief in what is said." Thibodeaux, XXXX-XXXX at p. 3; 782 So.2d at 1206. In light of the deference given to the factfinder's credibility determinations, I find no manifest error in the workers' compensation judge's determination regarding Claimant's credibility. Accordingly, I would affirm the trial court's finding that Claimant's termination was not related to his workers' compensation claim.
For these reasons, I find the factual determinations by the workers' compensation judge regarding the merits of the claim to be reasonable. Accordingly, I would affirm based on the merits of the claim and not based on LA. R.S. 23:1208.
NOTES
[1] La.R.S. 23:1208(E) requires the forfeiture of "any right to compensation benefits under this Chapter." (Emphasis added.) The limited jurisprudence in the area is clear that that the term "benefits" is comprehensive and is not limited to forfeiture of indemnity benefits. See Tuminello v. Girling Health Care Inc., 98-977 (La.App. 5 Cir. 1/26/99); 731 So.2d 316; Ard v. Orleans Material & Equipment, 98-0312 (La.App. 4 Cir. 12/29/98); 727 So.2d 1183.
[2] Neither is this a case in which the misrepresentation leads to forfeiture of only certain benefits as in Ledet v. Burger King/Sydran, 99-1380 (La.App. 3 Cir. 4/26/00); 763 So.2d 27, writ denied, 00-1512 (La.6/30/00); 766 So.2d 546, wherein a claimant was determined to have only forfeited benefits resulting from a misrepresentation of mileage. Rather, in this case, the misrepresentations found to exist by the workers' compensation judge relate to the existence or continuation of any work-related injury.